FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

2011 SEP -7 P 3: 09

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

JAMES ELLIOTT
5600 EUPHRATES COURT
CENTREVILLE, VA 20120

AND

SIRRAN COMMUNICATIONS INC.
19 KETCHUM STREET
WESTPORT, CT 06880

    Plaintiffs,

    v.

BRENDAN REILLY
71 WRIGHT STREET
WESTPORT, CT 06880

AND

SIRRAN COMMUNICATIONS USA INC.,
    Serve: State Corporation Commission
        Tyler Building
        1300 E. Main St.
        Richmond, Virginia 23219

AND

SIRRAN COMMUNCIATIONS LTD,
    Serve: State Corporation Commission
        Tyler Building
        1300 E. Main St.
        Richmond, Virginia 23219

AND

SIRRAN TECHNOLOGY LTD
    Serve: State Corporation Commission
        Tyler Building
        1300 E. Main St.
        Richmond, Virginia 23219

Civil Action No.: 1:11cv958
GBL/TRJ

1

AND                                                    *
                                                       *
DEAN PARSONS                                           *
SKEW GREEN BARN                                        *
CARLTON HUSTHWAITE                                     *
THIRSK Y07 2B, UK                                      *
                                                       *
          Defendants.                                  *
                                                       *
                                                       *
_____                       *

## COMPLAINT

Plaintiff James Elliott and SiRRAN Communications Inc., by and through counsel,

hereby submit this Complaint against Defendant Brendan Reilly, Defendant Dean Parsons,

Defendant SiRRAN Communications USA Inc., Defendant SiRRAN Communications LTD

and Defendant SiRRAN Technology Ltd.

1.      This is an action in law and equity seeking monetary damages and injunctive

relief pursuant to Federal Rules for Civil Procedure 65(a) and (b), for misappropriation of trade

secrets, breach of a fiduciary duty, conspiracy to breach fiduciary duties, conspiracy, unjust

enrichment and fraud.

2.      Brendan Reilly and Dean Parsons, both individually and as majority

shareholders of various SiRRAN Companies have a custom, pattern, practice and/or policy of

issuing equity shares in various SiRRAN Companies and then diminishing the minority

shareholders interest without honoring their agreements to the minority shareholders.

3.      Defendants Brendan Reilly and Dean Parsons have intentionally and purposefully

failed to disclose or have concealed various equity including Reseller Agreements, Sale of

Asset Agreements, Incorporations with new "replacement" entities to exclude minority

shareholders with subsequent investors. Pursuant to this custom, pattern, practice and conduct,

Defendants Brendan Reilly and Dean Parsons have attempted to defraud and eliminate the

minority shareholders, of which Plaintiff is one, from ownership in SiRRAN Communications Ltd (Ireland) and SiRRAN Technology Ltd (Ireland) as well as their interests in SiRRAN Communications Inc. (US) and SiRRAN Communications USA Inc. (US).

## PARTIES

1.     Plaintiff, James Elliott, was and is at all times a citizen of the United States and resides at 5600 Euphrates Court, Centerville, Virginia 20120 ("Plaintiff" and/or "Mr. Elliott"). Mr. Elliott is a 20 percent shareholder in SiRRAN Communications Inc., and defendants SiRRAN Communications USA Inc, SiRRAN Communications LTD, and SiRRAN Technology Ltd.

2.     Plaintiff, SiRRAN Communications Inc. (hereinafter "SiRRAN Inc."), was and is a Corporation organized and existing under the laws of the State of Delaware, which does business in the Commonwealth of Virginia.

3.     Defendant, Brendan Reilly ("Reilly") was and is at all times a citizen of the United States, with a residence located at 71 Wright Street, Westport, CT 06880. Reilly was and/or is a majority shareholder, director and officer of co-defendants SiRRAN Communications Inc., SiRRAN Communications USA Inc., SiRRAN Communications LTD, and SiRRAN Technology Ltd.

4.     Defendant, Dean Parsons ("Parsons") was and is at all times a citizen of the United Kingdom, with a residence located at Skew Green Barn, Carlton Husthwaite, Thirsk Y07 2B, UK. Parsons was and/or is a majority shareholder and director of co-defendants SiRRAN Communications Inc., SiRRAN Communications USA Inc., SiRRAN Communications LTD, and SiRRAN Technology Ltd.

5.     Défendant, SiRRAN Communications USA Inc. (hereinafter "SiRRAN USA"), was and is a Corporation organized and existing under the laws of the State of Delaware, and does business in the Commonwealth of Virginia. Upon information and belief, SiRRAN Communications USA Inc, is a wholly owned subsidiary of co-defendant SiRRAN Communications Ltd (Ireland).

6.     Defendant, SiRRAN Communications Ltd (hereinafter "SiRRAN Ltd"), was and is a Limited Company organized and existing under the laws of Ireland, which does business in the Commonwealth of Virginia.

7.     Defendant, SiRRAN Technology Ltd. (hereinafter "Technology"), was and is a Limited Company organized and existing under the laws of Ireland, which does business in the Commonwealth of Virginia. (Collectively all the SiRRAN Entities above shall be referred to as the "SiRRAN Companies").

## JURISDICTION

8.     This Court has original jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a) (2).

9.     Through various corporate agreements and contracts in the United States, Reilly, SiRRAN Inc., and SiRRAN USA, SiRRAN Ltd routinely, continuously and systematically conduct business activity in the United States and Virginia and generates substantial income from its hardware and software sales, primarily to the United States Department of Defense, United States Army, National Guard and State and Local First Responders.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) (2) and (a) (3). A substantial part of the events and omissions giving rise to this claim occurred in this District.

Furthermore, at least one defendant, Technology Ltd, regularly conducts substantial business activity herein.

11.     All defendants have transacted business in the Commonwealth and the claims alleged herein arise from Defendant's transactions in the Commonwealth including but not limited to transactions engaged in involving United States Department of Defense, United States Army, National Guard and State and Local First Responders. Hence all defendants are subject to personal jurisdiction in Virginia pursuant to Va. Code § 8.01-328(A) (2).

12.     There is jurisdiction over Defendants Reilly and Parsons because they caused injury in the Commonwealth to Plaintiff from acts or omissions outside the Commonwealth and Defendants regularly does business in the Commonwealth. Hence Defendants are subject to personal jurisdiction in Virginia pursuant to Va. Code § 8.01-328(A) (4).

13.     There is jurisdiction over all defendants because they caused injury in the Commonwealth to Plaintiff from acts or omission occurring outside the Commonwealth and derived substantial revenue from services used in the Commonwealth. Hence all defendants are subject to personal jurisdiction in Virginia pursuant to Va. Code § 8.01-328(A) (4).

## FACTS COMMON TO ALL COUNTS

14.     In 2002, Plaintiff Elliott while employed at Storage Are Networks ("SANZ") met Defendant Reilly when SANZ merged with Defendant Reilly's company.

15.     After working together several years at SANZ, Mr. Elliott and Defendant Reilly left to start a venture company.

16.     The venture company was called Thomas Keenan Ventures ("TK Ventures"). Mr. Elliott's initial investment was $50,000.

17.     TK Ventures created Z5 Corporation in November 2005 which created various deployable communications devices centered on what is known as NOMAD technology. Z5 Corporation later changed its name to Z5 Technologies. Mr. Elliott owned a twenty percent interest in Z5 Technologies ("Z5").

18.     Once Z5 was created it operated from Mr. Elliott's personal residence at 5600 Euphrates Court, Centerville, Virginia 20120. At that location, from 2005 until early 2008, Defendant Reilly and Plaintiff Elliott developed, built, assembled and marketed the hardware components of the NOMAD. During this time, Defendant Reilly spent extended periods of time living at Plaintiff's residence in order to engage in the business of Z5.

19.     Z5 Technologies focused on the development, implementation, marketing and sale of man-portable communications networks. The NOMAD Technology consists of rapidly deployable communications networks that could access and transmit both communications and data via satellite and cellular from remote places. These products were targeted for sales to the United States military and first responders. The system consists of five basic components, all of which are contained in hardened case, which could be carried on an individual's back and deliver secured communication from anywhere. The components are: BB2590 military standard batteries, a small satellite terminal, network antennas, laptop server and software. The NOMAD operates as a cellular communications network and creates cellular connectivity anywhere at any time. The server contains a database from which the software routes cellular communications seamlessly from remote areas where there are no communications networks. Essentially the NOMAD transfers voice and data communications, mission critical control, security, and mobile mesh networking technologies into rugged command and control platform.

20.     From the commencement of Plaintiff's relationship with Defendant Reilly until August 2010 Plaintiff Elliott cultivated and developed business with the Department of Defense ("DOD"), he has a top secret security clearance with the DOD.  The Defendant companies continued to do business in Virginia because all business was federally focused and Mr. Elliott's residence served as the hub for the marketing business.  At all times e-mail and other forms of communications were sent from Mr. Elliott's office in Virginia to the customers and other employees throughout the world.

21.     From that location, Defendant Reilly and Plaintiff Elliott developed a Customer base and made sales of the hardware components.  The customers included Department of Homeland Security, US Coast Guard, The Office of The Secretary of Defense, United States Air Force, Joint Task Force for Civilian Support, City of New Orleans and the United Arab Emirates Special Operations Command.  At all times Defendant Reilly represented that Mr. Elliott would maintain a twenty percent interest in the companies that owned the deployable communication hardware and software including NOMAD and any enhancements to that technology.

22.     In 2007, Defendant Reilly was approached by Knight Capital Group Inc., an investment firm, to structure a transaction which enabled Z5 to merge and become a publically traded corporation by a reverse merger with AEGIS Industries, Inc. which was at that time already a publically traded company.

23.     In connection with the reverse merger, Defendant Reilly and Mr. Elliott became shareholders in AEGIS Industries, which changed its name to Fortified Holding Corporation. In connection with the reverse merger Fortified Holding Corporation acquired all the assets of Z5, including the rights in NOMAD Technology.

7

24.     Defendant Reilly was elected Chief Executive Officer of and Chairman of the Board of Fortified Holding Corporation. As was the case with Z5 Mr. Elliott received a twenty percent interest in Fortified Holding Corporation, consisting of 3 million shares, thereby maintaining his interest in the deployable communication network.

25.     After the name change, Fortified Holding Corporation created a wholly owned subsidiary May 22, 2007 called Fortified Data Communications, Inc. to which it transferred all the rights in the NOMAD Technology. The largest owners of Fortified Data Communications, Inc. ("Fortified Data") were Defendant Reilly (75 %), and Mr. Elliott (20%), Sean Stevenson (5%).

26.     After Fortified Holding Corporation purchased Z5, Fortified Data enhanced the NOMAD by improving the power management system of NOMAD and integrating software which allowed for Wi-Fi and mesh networking out of the NOMAD and enabled the use of cellular networks to support dozens of users where there is no infrastructure or the infrastructure has been destroyed.

27.     Fortified Data was able to integrate Wi-Fi networking and use of cellular networking technology into the NOMAD system by partnering with Teleware Systems, a United Kingdom based company focused on software development, to develop a platform to integrate existing Teleware Systems cellular connectivity software into the NOMAD system.

28.     In 2008, Mr. Elliott traveled to the Middle East to create business opportunities for NOMAD Technology including all of its enhancements and to identify potential investors in the technology. While Mr. Elliott was in the Middle East, he help generate approximately $900,000 from the sale of the NOMAD Technology including the above described enhancements

8

29.     On September 24, 2008, Fortified Acquisition Corporation was created as a Delaware Corporation. Fortified Acquisition Corporation was solely owned by James Elliott, who was also the President.

30.     On or about December 10, 2008 Fortified Holdings sold all its stock in Fortified Data to Fortified Acquisition Corporation in exchange of a payment of $50,000 paid at closing plus assumption of an $5,000,000 note and an additional promissory note for $150,000.

31.     Fortified Data, as a wholly owned subsidiary of Fortified Acquisition Corporation, continued to produce and sell the NOMAD technology.

32.     At all relevant times during the development of the NOMAD technology Fortified Holdings and its subsidiaries and successors, operated in part from Plaintiff Elliott's residence, including maintenance of inventory at that location.

33.     On or about November 1, 2009, Fortified Data sold to SiRRAN Inc. all furniture, fixtures and equipment inventory, all parts and supplies and all intellectual property of the business including the NOMAD technology including the integration of Wi-Fi networking and cellular networks into the system as well as company contacts, customers and accounts.

34.     On November 5, 2009, Defendant Reilly as the sole director and president of SiRRAN Inc. authorized the issuance of three thousand outstanding shares, as a result of the acquisition of the assets from Fortified Data, to Sean Stevenson, Mr. Elliott and himself. As was the case with the prior companies, Defendant Elliott received 20 percent stock ownership in SiRRAN Inc..

35.     In 2009, Defendant Parsons and Defendant Reilly created SiRRAN Communications Ltd.

36.     SiRRAN Ltd, through the unauthorized and illegal diversion an of revenue of SiRRAN Inc  and use of intellectual property of SiRRAN Inc. developed software known as GSMnet which enabled cellular protocols to be deployed in remote areas where there is no telecommunications infrastructure.

37.     In December 2009, Defendants Parson and Reilly unilaterally, without a shareholder vote and others in violation of the Articles of Incorporation, bylaws and other applicable corporate laws, executed a Reseller Agreement for SiRRAN Inc., which provided, inter alia, that 92.5% of all SiRRAN Inc.'s sales from the sale of NOMAD technology and its enhancements would be paid to SiRRAN Ltd., at the time, was owned by Defendant Reilly (50%) and Defendant Parsons (50%).

38.     The Reseller Agreement falsely stated that SiRRAN, Ltd. (referred to as "the Company" in the agreement) was the owner or a licensee authorized to use and distribute certain NOMAD technology and its enhancements including the technology known as GSMnet.

39.     Despite the fact that SiRRAN Ltd. did not own the NOMAD technology and or have authorization to use the enhancements, the Reseller Agreement required that essentially all revenue from the products of SiRRAN Inc. to conveyed to SiRRAN Ltd.  There was no legitimate basis or consideration for SiRRAN Inc. to transfer these revenues to SiRRAN Ltd.

40.     On March 14, 2010 without the consent or agreement of Plaintiff or other non-Shareholders, Defendant Reilly caused the sale of the business assets of SiRRAN Inc. to Technologies, Ltd.  This transaction was the sale of all of the assets of SiRRAN Inc. the NOMAD Technology and its enhancements in violation of SiRRAN Inc.  8 Delaware Code § 271(a) and applicable law for among other reasons there was no notice to and approval from shareholders including Plaintiff and the consideration recorded in the Sale Agreement of

10

$10,000 was not fair was wholly inadequate.

41.     The sale also resulted in leaving SiRRAN Inc. with only a liability for a debt in the form of a carry forward loss for Defendant Reilly to utilize for approximately $1,500,000.00.

42.     On April 13, 2010, Reilly and Parsons incorporated SiRRAN USA as a wholly owned subsidiary of SiRRAN Ltd. Upon information and belief, Parsons and Reilly intended to close SiRRAN Inc. and replace it with SiRRAN USA and in the process eliminate all legacy shareholders including Plaintiff Elliott. Upon information and belief, despite being incorporated and issuing purchase orders in SiRRAN USA's name, SiRRAN USA did not become fully operational until January 2011 with the opening of its bank accounts at Citibank and any sales made by or in SiRRAN USA's name prior to January 2011, were either deposited in SiRRAN Inc.'s account, or sent directly to SiRRAN Ltd for deposit.

43.     During that time period SiRRAN Inc.'s revenue was being used to continue development of the NOMAD technology and its enhancements to include GSMnet for the benefit SiRRAN Ltd and SiRRAN USA, and was not being used for the benefit of SiRRAN Inc. or its shareholders.

44.     Approximately $800,000 in sales was generated from SiRRAN Inc. during that time period. These funds from SiRRAN USA, SiRRAN Inc. and other Reseller Corporations in the United States were used by Defendants Reilly and Parsons, through SiRRAN Ltd, to continue development and modifications to the NOMAD technology including primarily GSMnet technology. SiRRAN Ltd obtained substantial sales from various customers, including MobileCrypto, SIMcrypto and Vantagepoint, through the unauthorized illegal diversion of revenue and the intellectual property of SiRRAN Inc.

11

45. On December 21, 2010, SiRRAN Ltd, because of its improper acquisition of NOMAD Technology and the improperly obtained enhancements raised through a private placement offering equity of approximately Four Million Five Hundred Thousand dollars ($4,500,000.00) from five investors, selling approximately 24% in the form of "units" composed of one share of SiRRAN Ltd and one share of Technology Ltd, raising the company evaluation to approximately $19,500,000.00 dollars.

46. From the time Mr. Elliott was forced to leave the Companies to present Mr. Elliott had repeated communications with Defendant Reilly, who falsely represented that SiRRAN Inc. was worthless and concealed material facts that SiRRAN Inc. had sold the rights of NOMAD technology and its enhancements Technology to Technology Ltd for no consideration. These communications took place in Virginia via e-mail from Mr. Elliott. Moreover, Defendant Reilly never disclosed to Mr. Elliot that SiRRAN Inc. had sold all its assets to Technology Ltd.

47. To date Mr. Elliott at his residence in Virginia still maintains part of the inventory for the NOMAD technology.

## COUNT I
### (Breach of Fiduciary Duty - Duty of Loyalty, Defendant Reilly)

48. Plaintiff hereby incorporates by reference paragraphs 1-47, as if realleged herein in their entirety.

49. Plaintiff Elliot brings this claim derivatively on behalf of Plaintiff SIRRAN, Inc. Defendant Reilly is the sole Officer and/or Director for SiRRAN Inc., as such it was futile for Plaintiff to file a demand upon the board. Defendant Reilly was as the sole board member not disinterested or independent from the transaction or otherwise willing to bring forth a claim against himself on SiRRAN Inc.'s behalf.

12

50.     Defendant Reilly as an Officer and/or Director for SiRRAN Inc. had a duty of loyalty which required that he exhibit undivided and unselfish loyalty to the corporation, and prohibit any conflict of interest between this duty and self-interest. Pursuant to this duty, the Defendant was obligated to affirmatively protect the interests of the shareholders and refrain from doing anything that would injure the corporation. Pursuant to the duty, Defendant was obligated to use his utmost good faith and fair dealing with respect to the Shareholders during the course of and considering, negotiating and implementing any Reseller Agreement or sales agreement for the property of SiRRAN Inc. with Defendants SiRRAN Ltd and Technology Ltd and considering any impact on value of the shares.

51.     Defendant had a self-interest which conflicted with his duty of loyalty to all the shareholders in SiRRAN Inc. including Plaintiff.  The Defendant took no steps to advance the interest and protect the interests of all shareholders but to the contrary acted to advance the best interest of SiRRAN Technology and SiRRAN Ltd at all times.  By doing so, the Defendant only acted to protect his own conflicting self interest in blatant and intentional violations of his duty of loyalty.

52.     The Defendant violated the duty of loyalty by taking actions which effectively transferred the existing and ongoing business profits of SiRRAN Inc. to SiRRAN Ltd including, but not limited to:

　　　　a.  negotiating and  implementing the terms and conditions of the Reseller Agreement for SiRRAN Ltd for the purpose of advancing the best interest of Defendants SiRRAN Ltd, Technology Ltd contrary to the Plaintiff's interests and that of SiRRAN Inc.;

　　　　b.  concealing from Plaintiff and other Shareholders the conspiracy and plan of the

13

Board of Directors to approve the Reseller Agreement to SiRRAN Ltd., making

misleading statements to and concealing material information from Plaintiff and

the shareholders relating to that Agreement; and

c.  diverting income and property due to SiRRAN Inc. to SiRRAN Ltd and

Technology Ltd to further improve and enhance the NOMAD Technology.

53.     As a result of the above described breach of the duty of loyalty, SiRRAN Inc. and

Plaintiff have suffered injury in the form of a substantial reduction in the value of its business

and its assets.

54.     As a result of the Defendants' wrongful conduct as alleged herein, Plaintiff

SIRRAN Inc. has and expended substantial expenses in seeking to restore the business of

SiRRAN Inc. and suffered lost profits.

55.     At all relevant times, the breaches of fiduciary duty directly or proximately

caused or are a substantial contributing cause of the damages sustained by Plaintiff SIRRAN Inc.

## COUNT II
### (Breach of Fiduciary Duty-Duty of Disclosure, Defendant Reilly)

56.     Plaintiff hereby incorporates by reference paragraphs 1-56, as if realleged herein

in their entirety.

57.     Plaintiff Elliot brings this claim derivatively on behalf of Plaintiff SIRRAN, Inc.

Defendant Reilly is the sole Officer and/or Director for SiRRAN Inc., as such it was futile for

Plaintiff to file a demand upon the board.  Defendant Reilly was as the sole board member not

disinterested or independent from the transaction or otherwise willing to bring forth a claim

against himself on SiRRAN Inc.'s behalf.

60.     Defendant Reilly, as Director and/or officer of SiRRAN Inc., had a duty to

disclose material information necessary and available which a reasonable shareholder would

consider important in deciding when to schedule a shareholders' meeting or seek Court relief to prevent the Defendant Board of Directors from irreparably damaging the company.

61.    Defendant breached the duty of disclosure by making misleading statements and material omissions to Plaintiff and Shareholders and their representative in connection with the business of the company including, but not limited to, the actions of the Board relating to negotiation and implementation of the terms and conditions of the sale and purchase agreement for Technology Ltd; the Reseller Agreement with SiRRAN Ltd; the diversion of income and property diverting income and property due to SiRRAN Inc. to SiRRAN Ltd and Technology Ltd to further improve and enhance the NOMAD Technology other than for benefit of SiRRAN Inc. ; the plan of the Board of Directors to support, to the detriment of SiRRAN Inc., the new business of Defendants SiRRAN Ltd, Technology Ltd and SiRRAN USA; and failing to provide a complete and accurate report of financial condition of the company, the names of clients and the status of accounts receivable due.

62.    Had Plaintiff and the Shareholders been provided with accurate information and all the undisclosed information, they would have taken all available steps to block the sale and purchase agreement and the Reseller Agreement and sought an injunction preventing Defendants from removing assets and confidential information from SiRRAN Inc.

63.    As a result of the above described breach of the duty of loyalty, Plaintiff has suffered injury in the form of a substantial reduction in the value of business and its assets

64.    As a result of the Defendants' wrongful conduct as alleged herein, Plaintiff SiRRAN Inc. and Elliott have expended substantial expenses in seeking to restore the business and suffered lost profits.

65.    At all relevant times, the breach of fiduciary duty directly or proximately caused

or were a substantial contributing cause of the damages sustained by Plaintiffs.

## COUNT III
### (Breach of Fiduciary Duty- Duty of Care)

66.     Plaintiff hereby incorporates by reference paragraphs 1-65, as if realleged herein in their entirety.

67.     Plaintiff Elliot brings this claim derivatively on behalf of Plaintiff SIRRAN, Inc. Defendant Reilly is the sole Officer and/or Director for SiRRAN Inc., as such it was futile for Plaintiff to file a demand upon the board. Defendant Reilly was as the sole board member not disinterested or independent from the transaction or otherwise willing to bring forth a claim against himself on SiRRAN Inc.'s behalf.

68.     The Directors had a duty of care to the shareholders to act in good faith, with the honest belief that the action was in the best interest of the corporation and on an informed basis in connection with the business of the company.

69.     The Directors breached the duty of care by engaging, in bad faith and with gross negligence, in the following among other acts:

    a.   acting contrary to the best interest of SiRRAN Inc.;

    b.   negotiating and implementing the terms and conditions of the sale and purchase agreement to SiRRAN Ltd and Technology Ltd contrary to Plaintiff's and shareholders' interests;

    c.   negotiating and implementing the terms and conditions of the Reseller Agreement to SiRRAN Ltd contrary to Plaintiff's and shareholders' interests;

    d.   diverting income and property due to SiRRAN Inc. to SiRRAN Ltd and Technology Ltd. for the further improvement and enhancement of NOMAD Technology;

e. failing to schedule a shareholder vote and obtain shareholder approval in violation of with respect to the asset sale and purchase agreement and the Reseller Agreement;

f. failing to take actions necessary to secure SiRRAN Inc.'s rights in its intellectual property including taking action to prohibit Defendants SiRRAN Ltd from continuing to assert an ownership interest in and use the communication kits and software for their personal benefit without compensation to SiRRAN Inc.;

g. failing to take the steps necessary to prevent the disclosure and use by Technologies Ltd and SiRRAN Ltd of confidential information of the company without the express permission of SiRRAN Inc. and to prevent Technologies Ltd and SiRRAN Ltd from using confidential information of SiRRAN Inc.;

h. making the misrepresentations and material omissions set forth in Paragraph 83 above.

70. As a result of the above described breach of the duty of loyalty, Plaintiff and SiRRAN Inc. has suffered injury in the form of a substantial reduction in the value of its business and its assets

71. As a result of the Defendants' wrongful conduct as alleged herein, Plaintiff Elliott and SiRRAN Inc. have expended substantial expenses in seeking to restore the business and suffered lost profits.

72. At all relevant times, the breach of fiduciary duty of care directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs.

**COUNT IV**
**(Misappropriation of Trade Secrets)**
**(Defendant Reilly, Defendant Parsons, Defendant Technologies)**

73.     The allegations contained in paragraph 1 through 72 above are incorporated by reference as though fully set forth herein.

74.     Plaintiff Elliot brings this claim derivatively on behalf of Plaintiff SIRRAN, Inc. While an employee, officer or consultant of SiRRAN Inc., Defendants Reilly and Parsons had access to information of SiRRAN Inc. that (a) derived independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from its disclosure and use and (b) was the subject of efforts reasonable under the circumstances to maintain secrecy.  SiRRAN Inc. owned NOMAD Technology including the communications equipment, cellular software and hardware for deployable tactical situations and environments to facilitate communications, its processes, system architecture and design, client information, client needs for the communications kit, the identity of potential clients, client contacts, pricing methodology and research and secret data generated through the use of the development of the communications kit all of which constituted trade secrets under the Virginia Uniform Trade Secrets Act, Va. Code Ann. § 59.1-336 and is hereinafter referred to as "SiRRAN Inc. Trade Secrets."

75.     SiRRAN Inc. Trade Secrets (a) derived independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from its disclosure and use and (b) was the subject of efforts reasonable under the circumstances to maintain secrecy.

76.     At all relevant times, Defendants Reilly and Parsons had access to SiRRAN Inc. Trade Secrets.

77.     Defendants Reilly and Parsons knowingly and intentionally gave unauthorized access to SiRRAN Inc. Trade Secrets to Technology Ltd.

78.     Defendants Reilly and Parsons conveyed without authorization SiRRAN Inc. Trade Secrets to Defendant Technologies Ltd and SiRRAN Ltd.

79.     Defendant Technology Ltd knew or should have known that it had possession of SiRRAN Inc. Trade Secrets without lawful authorization from SiRRAN Inc.

80.     At no time did any Defendant obtain legal authorization, in any manner, from SiRRAN Inc. to use any of its trade secrets.

81.     Defendants Reilly and Parsons, as well as Defendant SiRRAN Ltd., Technologies Ltd., and SiRRAN USA (a) acquired trade secrets of SiRRAN Inc. with knowledge or reason to know that it was acquired by theft or breach of a duty and explicitly agreement to maintain its secrecy and (b) disclosed or used the trade secret of SiRRAN Inc. without express or implied consent after having acquired it under circumstances giving rise to a duty to maintain its secrecy or limit its use.

82.     Defendants are, accordingly, liable for misappropriation of trade secrets under the Virginia Uniform Trade Secrets Act, Va. Code Ann. §§ 591.1-336 *et seq.*

83.     As direct and proximate cause of Defendants violation of this statute, Plaintiff Elliott and SiRRAN Inc. has been injured and company suffered lost valuable business opportunities, information and competitive advantage due to the Defendants' actions and their ongoing conduct threatens to cause SiRRAN Inc. irreparable harm.  SiRRAN Inc. has suffered compensatory damages in the form of lost profits, investment expenses, lost business advantage and diminished value of proprietary business information.

## COUNT V
### (Unjust Enrichment)

82.     Plaintiff hereby incorporates by reference paragraphs 1-81, as if realleges herein in their entirety.

83.     By virtue of the various unlawful action described above, Defendants Reilly, Parson, SiRRAN Ltd, Technology Ltd and SiRRAN USA have refused to provide Plaintiff with its rightful and reasonable compensation for his services in contributing to the development of the NOMAD Technology, customers, contacts and accounts, communications kit equipment, and other services provided to develop the business of SiRRAN Inc., SiRRAN Ltd, Technology Ltd and SiRRAN USA, all of which Defendants have benefited substantially from their use.

84.     Defendants Reilly, Parson, SiRRAN Ltd, Technology Ltd and SiRRAN USA have been unjustly enriched by use of Plaintiff's services.

85.     As a direct and proximate result of the refusal of Defendants Reilly, Parson, SiRRAN Ltd, Technology Ltd and SiRRAN USA to provide rightful and reasonable compensation for his services in contributing to the development of the NOMAD Technology, customers, contacts and accounts, communications kit equipment, and other services provided to develop the business of SiRRAN Inc., SiRRAN Ltd, Technology Ltd and SiRRAN USA, Plaintiff has suffered substantial damages.

86.     The reasonable value of the Plaintiff's services in contributing to the development of the NOMAD Technology, customers, contacts and accounts, communications kit equipment, and other services provided to develop the business of SiRRAN Inc., SiRRAN Ltd, Technology Ltd and SiRRAN USA is one million dollars.

87.     Pending a proper distribution of the proceeds from use of the Plaintiff Elliott's assets, Plaintiff seeks the imposition of a constructive trust on the assets of SiRRAN Inc. owned, received or controlled by Defendants and the proceeds therefrom.

88.     As a direct and proximate result of defendant's aforesaid wrongful conduct, plaintiff has suffered substantial damages in the amount of one million dollars.

## COUNT VI
## (CONVERSION)

89.     Plaintiff hereby incorporates by reference paragraphs 1-88 above as if fully set

forth herein.

90.     Plaintiff Elliot brings this claim derivatively on behalf of Plaintiff SIRRAN, Inc.

At all times herein mentioned, and in particular on or about March 14, 2010 Plaintiff SiRRAN

Inc. was and still is entitled to the possession of the following intellectual and personal property,

namely: the NOMAD Technology, the methods for use and operation of the communications

equipment and cellular software and hardware for deployable tactical situations and environments

to facilitate communications, its source code, its processes and formula, client information, client

needs for the communications kit, the identity of potential clients, client contacts, pricing

methodology and research and secret date generated through the use of the development of the

communications kit,

91.     On or about March 14, 2010, Defendant Technology Ltd obtained without legal

authorization took from plaintiff's possession and converted the same to its own use.

92.     Plaintiff SiRRAN Inc. is the rightful owner of the NOMAD Technology, the

methods for use and operation of the communications equipment and cellular software and

hardware for deployable tactical situations and environments to facilitate communications, its

source code, its processes and formula, client information, client needs for the communications

kit, the identity of potential clients, client contacts, pricing methodology and research and secret

date generated through the use of the development of the communications kit, which is within

Defendants' control.  Plaintiff is entitled to full possession of the property due him from

Defendants Reilly, Parsons, Technology Ltd, SiRRAN Ltd and SiRRAN USA.

93.     Defendants are exercising dominion and control over Plaintiff's intellectual

21

property in an unlawful and unauthorized manner and thereby have deprived Plaintiff of the opportunity to exercise their rights of ownership including receiving a return on their property.

94.     Plaintiff has demanded both orally and in writing that Defendants cease using or otherwise exercising control over the property from which they would otherwise control. However, Defendants have steadfastly refused to do so.

95.     As a result of the foregoing, Defendants are required to return to SiRRAN Inc. NOMAD Technology methods for use and operation of the communications equipment and cellular software and hardware for deployable tactical situations and environments to facilitate communications, its source code, its processes and formula, client information, client needs for the communications kit, the identity of potential clients, client contacts, pricing methodology and research and secret date generated through the use of the development of the communications kit.

96.     As a direct and proximate result of Defendants' aforesaid wrongful conduct, Plaintiffs have suffered substantial damages.

## COUNT VII
### (Conspiracy under Va. Code § § 18.2-499, 500)

97.     Plaintiff hereby incorporates by reference paragraphs 1-96 above as if fully set forth herein.

98.     Plaintiff Elliot brings this claim derivatively on behalf of Plaintiff SIRRAN, Inc. and on his own behalf personally.   Defendants combined, associated, agreed, and/or mutually undertook in concert with one another to transfer the ongoing business of SiRRAN Inc. to SiRRAN Ltd and Technology Ltd and to impede the ability of SiRRAN Inc. to maintain its ongoing business and the value of its intellectual property for the purpose of willfully and maliciously injuring Plaintiffs in their reputation, trade and business in violation of § 18.2-499

22

(B), § 18.2-500.

99.     Defendants among themselves combined, associated, agreed, mutually undertook and/or in concert with one another for the purpose of willfully and maliciously injuring Plaintiffs in their reputation, trade and business in violation of § 18.2-499 (A).

100.    Specifically, Defendants engaged in an ongoing series of intentional deceptive acts and practices to cause the transfer of the ongoing business of SiRRAN Inc. to Defendants SiRRAN Ltd and Technology Ltd, to provide resources to Defendant Technology Ltd to effectively carry on the prior business of SiRRAN Inc., to permit Defendant SiRRAN Ltd to maintain its fraudulent claim of an ownership interest in the NOMAD Technology, the methods for use and operation of the communications equipment and cellular software and hardware for deployable tactical situations and environments to facilitate communications, its source code, its processes and formula, client information, client needs for the communications kit, the identity of potential clients, client contacts, pricing methodology and research and secret date generated through the use of the development of the communications kit, without compensation to Plaintiffs and to otherwise substantially injure the ability of Plaintiff SiRRAN Inc. to maintain itself as a viable and substantial entity and otherwise injuring Plaintiffs in their trade, business and reputation.

101.    Defendants engaged in these actions with the intent to destroy and injure Plaintiffs. The conspiracy included acts specifically intended to enhance the ability of Technologies Ltd and SiRRAN USA to carry on the previous business of SiRRAN Inc. and undermine Plaintiffs by conveying to Defendants revenue generated by SiRRAN Inc. to Defendants without just compensation or fair value to SiRRAN Inc., by blocking the efforts of Plaintiffs Elliot  to learn information about the ongoing operations and actions of the board of

directors, to protect the value of the business and its intellectual property, and to maintain

sufficient working capital of SiRRAN Inc. to maintain its business and by conveying to

Defendants without fair value to Plaintiffs the NOMAD Technology, the methods for use and

operation of the communications equipment and cellular software and hardware for deployable

tactical situations and environments to facilitate communications, its source code, its processes

and formula, client information, client needs for the communications kit, the identity of potential

clients, client contacts, pricing methodology and research and secret date generated through the

use of the development of the communications kit.

102.   Each Defendant had a personal stake in achieving the illegal objective of injuring

Plaintiffs in their trade, business and profession as each stood to benefit individually from the

conspiracy.

103.   Each of them participated in the conspiracy to obtain monetary benefits of the

conspiracy and to achieve the objective of advancing the interest of Defendants Technology Ltd,

SiRRAN Ltd, Reilly, Parsons and SiRRAN USA to the detriment of Plaintiff SiRRAN Inc.

104.   Defendants intended to injure Plaintiffs.  Indeed, the entire scheme was designed

to divert the assets and ongoing business of SiRRAN Inc. to Defendants Technology Ltd,

SiRRAN Ltd and SiRRAN USA and prevent Plaintiff SiRRAN Inc. and Plaintiff Elliott from

maintaining an ongoing business and from competing with Defendant Technology Ltd.

105.   As a result of the Defendants' actions Plaintiffs have suffered compensatory

damages including but not limited to incurred expenses, lost profits, and lost net worth.

106.   Defendants engaged in said acts of conspiracy maliciously, wantonly,

oppressively and with such recklessness and gross negligence as evidenced by a conscious

disregard for the rights of Plaintiffs.

24

## COUNT VIII
### (Conspiracy to Commit Breach of Fiduciary Duty)

107.    Plaintiff SiRRAN Inc. hereby incorporates by reference paragraphs 1- 106 above as if fully set forth herein.

108.    Plaintiff Elliot brings this claim derivatively on behalf of Plaintiff SIRRAN, Inc. Defendants combined and agreed to engage in acts designed to commit breaches of fiduciary duty against Plaintiff SiRRAN Inc.  Specifically, as alleged in detail above, Defendants engaged in an ongoing series of intentional deceptive acts and practices described above in paragraphs 40, 41, 42, 44, 54, 56 and 57 to cause the transfer of the ongoing business of SiRRAN Inc. to Technology Ltd, SiRRAN Ltd and SiRRAN USA, to provide resources to Defendant Technology Ltd to permit it to effectively carry on the business of SiRRAN Inc. and to substantially injure the ability of SiRRAN Inc. to maintain itself as a viable and substantial entity in its business based on the communication kits.

109.    Each Defendant's had a personal stake in achieving the illegal objective of conspiracy.

110.    Each of them participated in the conspiracy to obtain monetary benefits of the conspiracy and to achieve the objective of advancing the interest of Defendant Technology Ltd, SiRRAN Ltd and SiRRAN USA to detriment of SiRRAN Inc.

111.    Defendants intended to injure Plaintiff SiRRAN Inc.  Indeed, the entire scheme to divert the assets and ongoing business of SiRRAN Inc. to Defendants Technology Ltd, SiRRAN Ltd and SiRRAN USA and prevent SiRRAN Inc. from maintaining an ongoing business and from competing with Defendant Technologies Technology Ltd, SiRRAN Ltd and SiRRAN USA.

112.    As a result of the Defendants' actions Plaintiff SiRRAN Inc. has suffered

compensatory damages including but not limited to incurred expenses, lost profits, and lost net worth.

113.    Defendants engaged in said acts of conspiracy maliciously, wantonly, oppressively and with such recklessness and gross negligence as evidenced a conscious disregard for the rights of Plaintiff.

## COUNT IX
## (ACTUAL FRAUD)

114.    Plaintiff hereby incorporates by reference paragraphs 1- 113 above as if fully set forth herein.

115.    In December 21, 2010 Defendant Reilly represented in an email to Plaintiff Elliott purportedly summarizing the of corporate transactions involving SiRRAN Inc., that the only asset was a claim against UPS.

116.    The representation in paragraph 115 was false when made because it omitted the material fact that Defendant Reilly had caused SiRRAN Inc., in violation of corporate law, to sell all hardware, software and intellectual property rights of the NOMAD Technology to Technology Ltd for a nominal fee.

117.    The representation in paragraph 115 was false when made because it omitted the material fact that SiRRAN Inc. had a claim against Defendant Reilly and the other defendants for unlawfully obtaining possession and use of SiRRAN Inc.'s Trade Secrets and other rights in hardware, software and intellectual property rights of the NOMAD Technology.

118.    The representation made by Defendant Reilly in paragraph 115 was false representations of material fact.

119.    Defendant Reilly made the false representations in paragraph 115 intentionally with the intent to deceive Plaintiff Elliott into believing that his 20% share ownership in

SiRRAN Inc. was essentially worthless.

120.    Plaintiff reasonably relied to his detriment upon said representations of Defendant Reilly.

121.    As a direct and proximate cause of Defendant's actions, Plaintiff has suffered compensatory damages in the form of lost income from the value of his shares in SiRRAN Inc. and emotional distress.

122.    Defendant engaged in said fraudulent conduct maliciously, wantonly, oppressively and with such recklessness and gross negligence as evidenced a conscious disregard for the rights of Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs requests that this Honorable Court grant jointly and severally against the Defendants in favor of the Plaintiffs for the judgments and relief set forth below:

(A)    Imposing a constructive trust on all monies received by Defendants in connection with SiRRAN Ltd and Technology Ltd.

(B)    Granting a preliminary and permanent injunction blocking Defendants from using the hardware and software of the communication kits and any and all confidential, proprietary and trade secrets of SiRRAN Inc. thereof, imposing a constructive trust on all monies received by Defendants in connection with the communication kits or any confidential information of Plaintiff.

(C)    The issuance of a temporary injunction or temporary restraining order preventing the sale or transfer of any assets or shares held in the Irish Entities until such time as this matter can be submitted to this Court for a ruling on the merits.

(D)    Awarding compensatory damages against each Defendant, jointly and severally,

27

and in favor of the Plaintiffs in an amount not less than three million dollars ($3,000,000);

(E)     Awarding treble damages pursuant to Va. Code § 18.2- 500.

(F)     Awarding punitive damages against each Defendant, jointly and severally, and in favor of Plaintiff, in an amount of two million dollars ($2,000,000);

(G)     Awarding Plaintiff costs and other disbursements of this suit, including without limitation, reasonable fees for attorneys, accountants and experts; and

(H)     Granting Plaintiff such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Nicholas Hantzes VSB # 23967
HANTZES & ASSOCIATES
1749 Old Meadow Road
Suite 308
McLean, VA 22102
(703) 378-5000
(703) 448-4434 (fax)
nhantzes@hantzeslaw.com
Counsel for Plaintiff

Jerry Phillips VSB # 9211
Phillips, Beckwith, Hall & Chase
10513 Judicial Drive
Suite 100
Fairfax, Virginia  22030
(703) 691-4100
(703) 385-2745 (fax)
jphillips@pbhclaw.com
Counsel for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a jury on all issues and proceedings in which it is entitled to a jury.

Nicholas Hantzes VSB # 23967
HANTZES & ASSOCIATES
1749 Old Meadow Road
Suite 308
McLean, VA 22102
(703) 378-5000
(703) 448-4434 (fax)
nhantzes@hantzeslaw.com
Counsel for Plaintiff